UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KODI M. CADY,

                    Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                    Defendant.

NO:  12-CV-0140-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

        BEFORE THE COURT are the parties' cross motions for summary

judgment (ECF Nos. 15, 20).  These matters were heard without oral argument on

November 21, 2012.  Plaintiff is represented by Maureen J. Rosette.  Defendant is

represented by Jessica Milano.  The Court has reviewed the administrative record

and the parties' completed briefing and is fully informed.  There being no reason to

delay a decision, the hearing set for February 3, 2014, is vacated and this matter is

submitted without oral argument.  For the reasons discussed below, the Court

grants Defendant's motion and denies Plaintiff's motion.

ORDER GRANTING SUMMARY JUDGMENT ~ 1

1        JURISDICTION

2    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

3        STANDARD OF REVIEW

4    A district court's review of a final decision of the Commissioner of Social

5    Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

6    limited: the Commissioner's decision will be disturbed "only if it is not supported

7    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 688 F.3d 1144,

8    1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

9    relevant evidence that "a reasonable mind might accept as adequate to support a

10   conclusion."  *Id.* (quotation and citation omitted).  Stated differently, substantial

11   evidence equates to "more than a mere scintilla[,] but less than a preponderance."

12   *Id.* (quotation and citation omitted).  In determining whether this standard has been

13   satisfied, a reviewing court must consider the entire record as a whole rather than

14   searching for supporting evidence in isolation.  *Id.*

15   In reviewing a denial of benefits, a district court may not substitute its

16   judgment for that of the Commissioner.  If the evidence in the record "is

17   susceptible to more than one rational interpretation, [the court] must uphold the

18   ALJ's findings if they are supported by inferences reasonably drawn from the

19   record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

20   court "may not reverse an ALJ's decision on account of an error that is harmless."

ORDER GRANTING SUMMARY JUDGMENT ~ 2

*Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

1   "substantial gainful activity," the Commissioner must find that the claimant is not

2   disabled.  20 C.F.R. § 404.1520(b).

3        If the claimant is not engaged in substantial gainful activities, the analysis

4   proceeds to step two.  At this step, the Commissioner considers the severity of the

5   claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6   from "any impairment or combination of impairments which significantly limits

7   [his or her] physical or mental ability to do basic work activities," the analysis

8   proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9   does not satisfy this severity threshold, however, the Commissioner must find that

10  the claimant is not disabled.  *Id.*

11       At step three, the Commissioner compares the claimant's impairment to

12  several impairments recognized by the Commissioner to be so severe as to

13  preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

14  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 404.1520(d).

17       If the severity of the claimant's impairment does meet or exceed the severity

18  of the enumerated impairments, the Commissioner must pause to assess the

19  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §

404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

    At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

    At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

    The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

the analysis proceeds to step five, the burden shifts to the Commissioner to

ORDER GRANTING SUMMARY JUDGMENT ~ 5

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R. §

404.1560(c); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for a period of disability and disability insurance benefits on

July 21, 2009.  Tr. 147-153.  Her application was denied initially and on

reconsideration.  Tr. 93-95, 105-106.  Plaintiff filed a timely request for hearing

and appeared with an attorney at a hearing before an administrative law judge

("ALJ") on September 16, 2010.  Tr. 41-83.

The ALJ issued his decision on September 23, 2010, finding that Plaintiff

had severe impairments and that Plaintiff was not capable of performing past

relevant work.  Tr. 20-31.  Because the ALJ found that work existed in the national

economy that Plaintiff could perform, however, he found that Plaintiff was not

disabled.  Tr. 24-31.  On February 17, 2010, the Appeals Council denied Plaintiff's

request for review, making the ALJ's decision the Commissioner's final decision.

Tr. 1-5; 20 C.F.R. § 404.981.

## ISSUES

Plaintiff, Kodi M. Cady, seeks judicial review of the Commissioner's final

decision denying her a period of disability and disability insurance benefits under

Title II of the Social Security Act.  Plaintiff has identified three issues for review.

ORDER GRANTING SUMMARY JUDGMENT ~ 6

First, Plaintiff argues that the ALJ improperly discredited her testimony about the severity of her physical impairments.  Second, Plaintiff asserts that the ALJ erred in finding her capable of performing light exertional work with certain limitations.  Finally, Plaintiff argues that the Appeals Council improperly rejected the results of a psychological evaluation which Plaintiff submitted to the Commissioner after the ALJ rendered his decision.

DISCUSSION

**A. The ALJ's Adverse Credibility Findings**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 404.1527.  Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce [the] symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation omitted).

In the event that an ALJ finds the claimant's subjective assessment unreliable, however, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* The ALJ may also consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, Plaintiff argues that the ALJ improperly rejected her testimony concerning the severity of her physical limitations. Specifically, Plaintiff argues

1  that the ALJ failed to offer clear and convincing reasons for rejecting her testimony

2  that (1) she could only stand or walk for 10 to 20 minutes at a time before needing

3  to sit down; (2) she could only sit in a stationary position for 30 to 45 minutes at a

4  time; (3) she could only lift 20 pounds at a time; (4) she could not bend over to

5  pick up an object on the floor without bracing herself; and (5) she needed to lie

6  down approximately 10 to 12 times per day for a period of 30 to 45 minutes per

7  session in order to alleviate her back pain.  ECF No. 16 at 11.  Plaintiff asserts that

8  this testimony, if properly credited, would have precluded her from performing

9  other work existing in significant numbers in the national economy.

10        Contrary to Plaintiff's assertions, the ALJ provided specific, clear and

11  convincing reasons for discrediting her testimony.  First, the ALJ found that

12  Plaintiff's alleged symptomology was "disproportionate to the level of pain

13  expected from the clinical signs and findings within the medical records."  Tr. 27.

14  Specifically, the ALJ noted that Dr. Dibble had evaluated Plaintiff in August 2007

15  and found her to "ambulate with an antalgic gait, to have full range of motion of

16  the lumbar spine, and negative straight leg raising tests."  Tr. 27.  In the ALJ's

17  view, these negative findings "would not correlate to the magnitude of pain levels

18  as attested to by [Plaintiff]."  Tr. 27.

19        Second, the ALJ observed that Plaintiff had not received formal medical

20  treatment for her allegedly debilitating back pain in over two years.  Tr. 27.  The

ORDER GRANTING SUMMARY JUDGMENT ~ 9

ALJ also found it significant that Plaintiff had abandoned her prescription pain medication in favor of over-the-counter Tylenol Arthritis medicine. Tr. 27. In the ALJ's estimation, the fact that Plaintiff had stopped seeking medical treatment and had been taking only non-prescription painkillers tended to undermine her testimony about the severity of her back pain. *See Tommasetti*, 533 F.3d at 1039 (holding that ALJ may draw adverse inference from a claimant's failure to seek an aggressive treatment program or failure to seek "an alternative or more-tailored treatment program" after discontinuing prescription medication regimen).

Third, the ALJ found that Plaintiff had failed to follow her doctors' repeated directives to lose weight, exercise regularly, and quit smoking. Tr. 27. The ALJ noted that many of Plaintiff's symptoms were related to her weight and that her failure to follow these simple directives demonstrated a "lack of motivation to feel better." Tr. 27. This led the ALJ to conclude that Plaintiff's admissions to "not following a consistent medical diet plan and to not exercising [by] walking or swimming shows poor effort on her part to improve." Tr. 27. This was a permissible basis for discrediting Plaintiff's testimony. *Tommasetti*, 533 F.3d at 1039; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

ORDER GRANTING SUMMARY JUDGMENT ~ 10

1    Fourth, the ALJ found that Plaintiff's complaints of rapid weight gain

2    resulting from a thyroid procedure in early 2007[1] were not credible.  In support of

3    this finding, the ALJ noted that Plaintiff's historical average weight was much

4    higher than the 130 to 140 pounds that she claimed.  Citing to Plaintiff's medical

5    records, the ALJ explained that Plaintiff weighed 188 pounds in August 2001, 202

6    pounds in October 2003, 211 pounds in December 2004, 196 pounds in July 2005,

7    174 pounds in August 206, 189 pounds in May 2007, 211 pounds in November

8    2007, 229 pounds in June 2008, 234 pounds in July 2008, and 241 pounds in

9    March 2009.  Tr. 27-28.  In view of this historical evidence, the ALJ concluded

10   that Plaintiff's claims of rapidly gaining 80 pounds following the thyroid procedure

11   were significantly embellished: "Although [Plaintiff] continued to gain weight" the

12   ALJ observed, she did not do so "at an alarming pace."  Tr. 28.

13   Fifth, the ALJ found that there was no medical evidence to support

14   Plaintiff's assertion that she needed to lie down 10 to 12 times per day for a period

15   of 30 minutes at a time in order to control her back pain.  In addition to this lack of

16   evidence, the ALJ noted that Plaintiff's testimony about needing to lie down was

17   inconsistent with prior reports that lying down caused Plaintiff significant pain and

18

19   [1] The record does not reflect the exact date on which the thyroid procedure was

20   performed.

1    that *sitting* was her most comfortable position.  Tr. 28.  The ALJ further observed

2    that Plaintiff sat through over one hour of testimony at the September 16, 2010

3    hearing "without any display of discomfort in a seated position."  Tr. 28.  These

4    were permissible bases for rejecting Plaintiff's testimony that she needed to lie

5    down 10 to 12 times per day.  Tr. 28.  *See Thomas*, 278 F.3d at 958 (ALJ may

6    consider inconsistencies in claimant's testimony when assessing credibility); SSR

7    96-7p ("In instances where the individual attends an administrative hearing

8    conducted by the adjudicator, the adjudicator may also consider his or her own

9    recorded observations of the individual as part of the overall evaluation of the

10    credibility of the individual's statements.").

11        Finally, the ALJ observed that the timing of Plaintiff's claim for disability

12    benefits was suspect.  Specifically, the ALJ observed that Plaintiff initially stopped

13    working for reasons unrelated to her disability when her former employer moved

14    its assembly plant to Mexico.  Tr. 28.  Further, the ALJ noted that Plaintiff "is

15    apparently waiting for her company pension of $700 a month available to her at the

16    age of 55 on her next birthday to come forth while she continues to collect

17    unemployment benefits and look for employment in the meantime."  Tr. 28.  In the

18    ALJ's view, these circumstances tended to suggest that Plaintiff was exaggerating

19    the severity of her symptoms in order to avoid having to go back to work.  Tr. 28.

20

ORDER GRANTING SUMMARY JUDGMENT ~ 12

1    Having thoroughly reviewed the record, the Court finds that the ALJ

2    supported his adverse credibility findings with specific, clear and convincing

3    findings which are supported by substantial evidence.  As the ALJ appropriately

4    recognized, the record indicates that Plaintiff's physical limitations are not so

5    severe as to preclude her from performing light duty work with appropriate

6    limitations.  Accordingly, the Court concludes that the ALJ did not arbitrarily

7    discredit Plaintiff's testimony.

8    **B. The ALJ's Residual Functional Capacity Assessment**

9    As noted above, residual functional capacity ("RFC") is defined as the

10   claimant's ability to perform physical and mental work activities on a sustained

11   basis despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  In making an

12   RFC assessment, the Commissioner is required to consider all of the claimant's

13   impairments, including impairments that are not "severe" within the meaning of

14   the regulations.  20 C.F.R. § 404.1545(a)(2).

15   In this case, the ALJ assessed Plaintiff's RFC as follows:

16   [C]laimant has the residual functional capacity to perform routine
     learned light exertional work as defined in 20 CFR [§] 404.1567(b)
17   except the claimant could only stand and walk for up to 4 hours in an
     8 hour day, could not walk up over one flight of stairs, could not
18   climb ladders, could not crawl, and could not work at heights.  The
     claimant would need a sit/stand option and/or be permitted to stretch
19   not more than one to three minutes per hour when sitting.  The
     claimant could not perform high stress work, could not perform
20   intense twisting of her upper body, could not bend from the waist to

ORDER GRANTING SUMMARY JUDGMENT ~ 13

pick up objects from the floor, and could not perform fast-paced production rate work.

Tr. 24 (footnote omitted). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 24.

Here, Plaintiff contends that the ALJ erred as a matter of law in finding her capable of performing routine learned light exertional work at step five of the sequential analysis. Specifically, Plaintiff argues that the limitations identified in the RFC (*i.e.*, no more than four hours of standing or walking per day, no more than one flight of stair climbing, no climbing on ladders, no crawling, no working at heights, and a sit/stand option with periodic stretching breaks) effectively limited Plaintiff to performing *sedentary* work rather than light exertional work. ECF No. 22 at 2. Plaintiff's primary argument is that light exertional work requires a person to be able to stand or walk for up to *six* hours out of an eight-hour workday (*see* SSR 83-10) and that Plaintiff cannot satisfy this requirement because the ALJ expressly found that she was capable of standing or walking for no more than *four* hours per workday. ECF No. 16 at 10; ECF No. 22 at 2. Plaintiff also argues that her inability to perform intense twisting of her upper body and inability to bend from the waist to pick up objects from the floor precludes her from stooping occasionally as required for light exertional work. Given that the ALJ's findings "effectively limited" her to performing sedentary work, Plaintiff argues,

ORDER GRANTING SUMMARY JUDGMENT ~ 14

1  she "should have been found disabled based on GRID Rule 201.14." ECF No. 16

2  at 11.

3      Plaintiff's efforts to achieve a disability determination based upon Medical-

4  Vocational Rule ("Grid Rule") 201.14 are unavailing.  As Defendant correctly

5  notes, Plaintiff's arguments are "predicated upon the false premise that Plaintiff

6  was limited to work at the sedentary exertional level."  ECF No. 21 at 24.  The

7  ALJ did not, either expressly or effectively, find that Plaintiff was limited to

8  performing sedentary work.  Rather, the ALJ found that Plaintiff's abilities

9  *exceeded* those required for sedentary work, but did not meet all or substantially all

10  of the requirements for light exertional work.  In other words, the ALJ found that

11  Plaintiff's abilities fell somewhere in-between the requirements for sedentary work

12  and light exertional work.

13      In light of this finding, the ALJ was required to use the Grid Rules as a

14  *framework* for making his disability determination rather than treating them as

15  dispositive.  SSR 83-12.  That is precisely what the ALJ did.  Tr. 30.  First, the

16  ALJ explained that the Grid Rules direct a finding of "disabled" or "not disabled"

17  only when a claimant can perform all or substantially all of the exertional demands

18  at a given level of exertion.  Tr. 30 (citing SSR 83-11).  The ALJ then explained

19  that, to the extent a claimant cannot perform all or substantially all of the exertional

20  demands at a given level of exertion, the Grid Rules are used as a framework for

1   decision-making.  Tr. 30 (citing SSR 83-12 and SSR 83-13).  Recognizing that

2   Plaintiff's limitations precluded her from performing all or substantially all of the

3   requirements of light exertional work, the ALJ then asked the vocational expert,

4   Daniel McKinney, Sr., whether there were specific light exertional jobs in the

5   national economy which could accommodate Plaintiff's specific limitations.  Tr.

6   30.  The vocational expert testified that someone with Plaintiff's limitations could

7   work as a hand packer/packager or a production inspector/weld inspector—both

8   classified as light exertional work—with a sit-stand option.  Tr. 78-82.  The ALJ's

9   use of this procedure and acceptance of the vocational expert's testimony was

10  proper pursuant to SSR 83-12.  Accordingly, the ALJ did not err in finding

11  Plaintiff capable of performing routine learned light exertional work at step five of

12  the sequential analysis.

13  **C. Evidence of Mental Impairment**

14       Plaintiff's final contention is that Defendant did not adequately consider

15  evidence of her mental impairments in reaching its decision.  ECF No. 16 at 13.

16  Specifically, Plaintiff argues that a psychological assessment performed by Dr.

17  Dennis Pollack—which Plaintiff provided to the Appeals Council after the ALJ

18  rendered his decision—demonstrates that Plaintiff "would have marked limitations

19  with regard to her ability to perform activities within a schedule, maintain regular

20  attendance, and be punctual within regular tolerances; and complete a normal

ORDER GRANTING SUMMARY JUDGMENT ~ 16

1   workday and workweek without interruptions from psychologically based

2   symptoms and to perform at a consistent pace without an unreasonable number and

3   length of rest periods." ECF No. 16 at 15-16. According to Plaintiff, this evidence

4   should have been incorporated into her RFC. ECF No. 16 at 16.

5        As a threshold matter, the Court finds that it may properly consider Dr.

6   Pollack's report since the Appeals Council considered it in denying Plaintiff's

7   request for review and therefore incorporated it into the administrative record. *See*

8   *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012)

9   ("[W]e hold that when the Appeals Council considers new evidence in deciding

10  whether to review a decision of the ALJ, that evidence becomes part of the

11  administrative record, which the district court must consider when reviewing the

12  Commissioner's final decision for substantial evidence.").

13       Having reviewed Dr. Pollack's report in its entirety, the Court concludes that

14  Plaintiff's arguments are unavailing. Although Dr. Pollack noted a mild limitation

15  in Plaintiff's "ability to maintain attention and concentration for extended periods"

16  and marked limitations in her abilities to "perform activities within a schedule,

17  maintain regular attendance, and be punctual within customary tolerances," and

18  "complete a normal workday and workweek without interruption from

19  psychologically based symptoms and to perform at a consistent pace without an

20  unreasonable number and length of rest periods," these limitations appear to be

ORDER GRANTING SUMMARY JUDGMENT ~ 17

1   almost entirely unsupported by objective medical evidence.  Notably, these

2   findings appear on a standardized check-the-box form and are not referenced

3   elsewhere in Dr. Pollack's report.  Tr. 402.  Despite being asked to do so, Dr.

4   Pollack did not explain these limitations in narrative form.  *See* Tr. 404.

5   Accordingly, these findings are entitled to little weight.  *See Molina v. Astrue*, 674

6   F.3d 1104, 1111-12 (9th Cir. 2012) (explaining that the Ninth Circuit has

7   consistently permitted ALJs to "reject check-off reports that do not contain any

8   explanation of the bases of the [physician's] conclusions") (quotation, citation and

9   modifications omitted).

10         Moreover, the findings above are entirely inconsistent with Plaintiff's actual

11   work history.  The record reflects that Plaintiff worked for her former employer for

12   32 straight years before the company relocated its operations to Mexico.  Tr. 48.  It

13   seems difficult to imagine that Plaintiff would have been able to maintain this

14   exemplary work history if she were prone to being tardy, absent, or interrupted by

15   psychological symptoms.  Given that Dr. Pollack's findings were ostensibly based

16   upon Plaintiff's *static* mental functioning levels rather than a specific disorder

17   which post-dated her employment, there is no basis for incorporating them into

18   Plaintiff's RFC.  Accordingly, the Court finds that the Appeals Council did not err

19   in declining to revisit the ALJ's decision.

20

ORDER GRANTING SUMMARY JUDGMENT ~ 18

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 20) is

       **GRANTED**.

    The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

    **DATED** this 21st day of November, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT ~ 19